# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

IGNACIO BARAJAS MACIAS,

    Petitioner,

vs.

BILL DONAT, et al.,

    Respondents.

Case No. 3:06-CV-00631-HDM-(RAM)

**ORDER**

    Before the Court are the First Amended Petition for Writ of Habeas Corpus (#17), Respondents' Answer (#34), and Petitioner's Reply (#38).  The Court finds that Petitioner is not entitled to relief and denies the First Amended Petition (#17).

    Petitioner was charged in the Second Judicial District Court of the State of Nevada with three counts of trafficking in a controlled substance.  Trafficking has three levels of punishment, depending upon the weight of the controlled substance involved. See Nev. Rev. Stat. § 453.3385.  In Petitioner's case, Count I count was first-level trafficking (four grams to less than fourteen grams), Count II was second-level trafficking (fourteen grams to less than twenty-eight grams), and Count III was third-level trafficking (twenty-eight grams and more).  Ex. 3 (#18-4).

1    Petitioner declined an offer of a plea agreement and
2 elected to go to trial.  The plea offer was for a second-level
3 trafficking count.[1]  Ex. 21, p. 47 (#19-5, p. 48).[2]  Soon after the
4 jury was selected, Petitioner decided to plead guilty.  The
5 prosecution declined to reinstate the plea offer.  Ex. 22, p. 6
6 (#19-6, p. 7).  Petitioner pleaded guilty to the crimes as charged,
7 and the prosecution was free to argue about the appropriate
8 sentences.  Ex. 6, p. 3 (#18-7, p. 5).  At sentencing, Petitioner
9 moved to withdraw his plea, and the court denied his motion.  Ex. 7
10 (#18-8).  The court sentenced Petitioner to one to three years
11 imprisonment for Count I, two to seven years imprisonment for Count
12 II, and ten to twenty-five years imprisonment for Count III; the
13 terms run concurrently.  Ex. 8 (#18-9).  Petitioner appealed, and
14 the Nevada Supreme Court affirmed.  Ex. 12 (#18-13).  Petitioner
15 then filed a post-conviction habeas corpus petition in state court.
16 Ex. 15 (#18-16).  The court appointed counsel, who filed a
17 supplement.  Ex. 16 (#18-17).  The court conducted an evidentiary
18 hearing.  Ex. 21, 22, 23 (#19-5, #19-6, #19-7).  The court then
19 denied the petition.  Ex. 24 (#19-8).  Petitioner appealed, and the
20 Nevada Supreme Court affirmed.  Ex. 32 (#19-16).  Petitioner then
21 commenced this action.
22    "A federal court may grant a state habeas petitioner
23 relief for a claim that was adjudicated on the merits in state
24
25    [1]It is unclear whether the offer was to plead guilty to only
26 one count of second-level trafficking or to drop the third-level
   trafficking count down to second-level trafficking.
27
28    [2]Page numbers in parentheses refer to the documents in the
   Court's computerized docket.

1  court only if that adjudication 'resulted in a decision that was

2  contrary to, or involved an unreasonable application of, clearly

3  established Federal law, as determined by the Supreme Court of the

4  United States,'" <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15 (2003)

5  (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court

6  adjudication "resulted in a decision that was based on an

7  unreasonable determination of the facts in light of the evidence

8  presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

9           A state court's decision is "contrary to" our clearly
          established law if it "applies a rule that contradicts
10         the governing law set forth in our cases" or if it
          "confronts a set of facts that are materially
11         indistinguishable from a decision of this Court and
          nevertheless arrives at a result different from our
12         precedent." A state court's decision is not "contrary to
          . . . clearly established Federal law" simply because the
13         court did not cite our opinions.  We have held that a
          state court need not even be aware of our precedents, "so
14         long as neither the reasoning nor the result of the
          state-court decision contradicts them."

15

16 <u>Id.</u> at 15-16.  "Under § 2254(d)(1)'s 'unreasonable application'

17 clause . . . a federal habeas court may not issue the writ simply

18 because that court concludes in its independent judgment that the

19 relevant state-court decision applied clearly established federal

20 law erroneously or incorrectly.  Rather, that application must be

21 objectively unreasonable."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76

22 (2003) (internal quotations omitted).

23         [T]he range of reasonable judgment can depend in part on
          the nature of the relevant rule.  If a legal rule is
24         specific, the range may be narrow.  Applications of the
          rule may be plainly correct or incorrect.  Other rules
25         are more general, and their meaning must emerge in
          application over the course of time.  Applying a general
26         standard to a specific case can demand a substantial
          element of judgment.  As a result, evaluating whether a
27         rule application was unreasonable requires considering
          the rule's specificity.  The more general the rule, the

28

1
        more leeway courts have in reaching outcomes in
        case-by-case determinations.
2

3  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

4          When it comes to state-court factual findings, [the
        Antiterrorism and Effective Death Penalty Act] has two
5       separate provisions.  First, section 2254(d)(2)
        authorizes federal courts to grant habeas relief in cases
6       where the state-court decision "was based on an
        unreasonable determination of the facts in light of the
7       evidence presented in the State court proceeding."  Or,
        to put it conversely, a federal court may not
8       second-guess a state court's fact-finding process unless,
        after review of the state-court record, it determines
9       that the state court was not merely wrong, but actually
        unreasonable.  Second, section 2254(e)(1) provides that
10      "a determination of a factual issue made by a State court
        shall be presumed to be correct," and that this
11      presumption of correctness may be rebutted only by "clear
        and convincing evidence."
12
        We interpret these provisions sensibly, faithful to their
13      text and consistent with the maxim that we must construe
        statutory language so as to avoid contradiction or
14      redundancy.  The first provision—the "unreasonable
        determination" clause—applies most readily to situations
15      where petitioner challenges the state court's findings
        based entirely on the state record.  Such a challenge may
16      be based on the claim that the finding is unsupported by
        sufficient evidence, that the process employed by the
17      state court is defective, or that no finding was made by
        the state court at all.  What the "unreasonable
18      determination" clause teaches us is that, in conducting
        this kind of intrinsic review of a state court's
19      processes, we must be particularly deferential to our
        state-court colleagues.  For example, in concluding that
20      a state-court finding is unsupported by substantial
        evidence in the state-court record, it is not enough that
21      we would reverse in similar circumstances if this were an
        appeal from a district court decision.  Rather, we must
22      be convinced that an appellate panel, applying the normal
        standards of appellate review, could not reasonably
23      conclude that the finding is supported by the record.
        Similarly, before we can determine that the state-court
24      factfinding process is defective in some material way, or
        perhaps non-existent, we must more than merely doubt
25      whether the process operated properly. Rather, we must be
        satisfied that any appellate court to whom the defect is
26      pointed out would be unreasonable in holding that the
        state court's fact-finding process was adequate.
27

28  Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004).

                              -4-

1          "Rule 7 of the Rules Governing § 2254 cases allows the
2   district court to expand the record without holding an evidentiary
3   hearing." Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir.
4   2005).   The requirements of § 2254(e)(2) apply to a Rule 7
5   expansion of the record, even without an evidentiary hearing.   Id.
6   "An exception to this general rule exists if a Petitioner exercised
7   diligence in his efforts to develop the factual basis of his claims
8   in state court proceedings." Id.

9          The petitioner bears the burden of proving by a
10  preponderance of the evidence that he is entitled to habeas relief.
11  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

12         In Ground 1, Petitioner claims that the trial court
13  abused its discretion in denying his motion to withdraw his guilty
14  plea, because his plea was unknowing and involuntary.   A
15  defendant's guilty plea must be entered knowingly and voluntarily,
16  and the court record must reflect that fact.   Brady v. United
17  States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238,
18  242-43 (1969).   On direct appeal, the Nevada Supreme Court held:

19              In the instant case, the district court's finding that
20         Barajas entered a knowing and voluntary plea is supported
               by substantial evidence.   At the plea canvass, the
               district court advised Barajas of the constitutional
21         rights he was waiving in entering a guilty plea, the
               elements of the charged offenses, and the direct
22         consequences resulting from the plea.   Barajas admitted
               that he committed the charged offense and represented to
23         the district court that he wanted to plead guilty, rather
               than have the jury, which was already impaneled and had
24         heard evidence in the case, decide his guilt or
               innocence.   Therefore, Barajas' claims that he was
25         pressured into pleading guilty and did not understand
               what he was "answering to" by pleading guilty are belied
26         by the record.   Accordingly, the district court did not
               abuse its discretion in denying Barajas' presentence
27         motion to withdraw.

28
                                    -5-

1   Ex. 12, pp. 2-3 (#18-13, pp. 3-4).  The hearing on the change of

2   plea confirms the analysis of the Nevada Supreme Court.  See Ex. 6

3   (#18-7).  Petitioner used an interpreter, and there was some

4   confusion between question, answer, and interpretation at one point

5   in the proceedings.  Ex. 6, p. 10 (#18-7, p. 12).  However, the

6   questions were complicated, and once the judge simplified his

7   questions, Petitioner answered in accordance with the answers that

8   he gave at other points in the proceedings.  At the sentencing

9   hearing, Petitioner wanted to withdraw his plea.  However, he did

10   not give any reason why he wanted to withdraw his plea except that

11   he felt a lot of pressure and headaches once the trial started.

12   Ex. 7, p. 2 (#18-8, p. 4).  Under those circumstances, the Nevada

13   Supreme Court reasonably applied Boykin and Brady.  28 U.S.C.

14   § 2254(d)(1).

15          Ground Two contains three claims of ineffective

16   assistance of trial counsel, Kevin Van Ry.  "[T]he right to counsel

17   is the right to the effective assistance of counsel."  McMann v.

18   Richardson, 397 U.S. 759, 771 & n.14 (1970).  A petitioner claiming

19   ineffective assistance of counsel must demonstrate (1) that the

20   defense attorney's representation "fell below an objective standard

21   of reasonableness," Strickland v. Washington, 466 U.S. 668, 688

22   (1984), and (2) that the attorney's deficient performance

23   prejudiced the defendant such that "there is a reasonable

24   probability that, but for counsel's unprofessional errors, the

25   result of the proceeding would have been different," id. at 694.

26   "[T]here is no reason for a court deciding an ineffective

27   assistance claim to approach the inquiry in the same order or even

28

-6-

1  to address both components of the inquiry if the defendant makes an
2  insufficient showing on one." Id. at 697.

3      Strickland expressly declines to articulate specific
4  guidelines for attorney performance beyond generalized duties,
5  including the duty of loyalty, the duty to avoid conflicts of
6  interest, the duty to advocate the defendant's cause, and the duty
7  to communicate with the client over the course of the prosecution.
8  466 U.S. at 688.  The Court avoided defining defense counsel's
9  duties so exhaustively as to give rise to a "checklist for judicial
10 evaluation of attorney performance. . . .  Any such set of rules
11 would interfere with the constitutionally protected independence of
12 counsel and restrict the wide latitude counsel must have in making
13 tactical decisions."  Id. at 688-89.

14     Review of an attorney's performance must be "highly
15 deferential," and must adopt counsel's perspective at the time of
16 the challenged conduct to avoid the "distorting effects of
17 hindsight." Strickland, 466 U.S. at 689.  A reviewing court must
18 "indulge a strong presumption that counsel's conduct falls within
19 the wide range of reasonable professional assistance; that is, the
20 defendant must overcome the presumption that, under the
21 circumstances, the challenged action 'might be considered sound
22 trial strategy.'"  Id. (citation omitted).

23     The Sixth Amendment does not guarantee effective counsel
24 per se, but rather a fair proceeding with a reliable outcome.  See
25 Strickland, 466 U.S. at 691-92.  See also Jennings v. Woodford, 290
26 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration
27 that counsel fell below an objective standard of reasonableness
28 alone is insufficient to warrant a finding of ineffective

-7-

assistance.  The petitioner must also show that the attorney's
sub-par performance prejudiced the defense.  <u>Strickland</u>, 466 U.S.
at 691-92.  There must be a reasonable probability that, but for
the attorney's challenged conduct, the result of the proceeding in
question would have been different.  <u>Id.</u> at 694.  "A reasonable
probability is a probability sufficient to undermine confidence in
the outcome."  <u>Id.</u>

In Ground Two(A), Petitioner argues that counsel failed
to ensure that the plea agreement was in written form, as required
by Nev. Rev. Stat. § 174.035.[3]  The state district court held that
the failure to obtain a written plea agreement was harmless error
because Petitioner's plea was voluntary.  Ex. 24, p. 3 n.3 (#19-8,
p. 4) (citing <u>Ochoa-Lopez v. Warden</u>, 992 P.2d 136 (Nev. 2000)).
This Court's concern is not whether the state court should have
followed state law, but whether Petitioner's custody violates
federal law.  The Supreme Court of the United States has not held
that a guilty plea requires a written memorandum.  As noted above,
the Supreme Court has held only that a guilty plea be knowing and
voluntary, and that a plea agreement be on the record.  As noted
with Ground 1, Petitioner's plea met those conditions.  Therefore,

_____

[3]At the time, § 174.035 stated, in relevant part:

> 6.   A defendant may not enter a plea of guilty or guilty
> but mentally ill pursuant to a plea bargain for an
> offense punishable as a felony for which:
>
> (a) Probation is not allowed; or
>
> (b) The maximum prison sentence is more than 10 years,
> unless the plea bargain is set forth in writing and
> signed by the defendant, the defendant's attorney, if he
> is represented by counsel, and the prosecuting attorney.

-8-

1 counsel was not ineffective because he did not ensure that the plea

2 agreement was is writing.

3       In Ground Two(B), Petitioner argues that counsel did not

4 adequately investigate Petitioner's case, by learning the identity

5 of the confidential informant.  Before the grand jury, the

6 informant testified that he worked with police to purchase

7 methamphetamine from Petitioner.  The police searched the informant

8 before the transactions, placed listening devices upon the

9 informant, and gave him money.  The informant then purchased

10 methamphetamine from Petitioner.  The informant returned to the

11 police, who searched him after the transactions.  Ex. 2, pp. 18-21

12 (#18-3, pp. 20-23).  Petitioner argues that counsel never

13 discovered the name of the informant to determine whether the

14 public defender had represented the informant, thus causing a

15 conflict of interest.  Petitioner also argues that if the

16 prosecution refused to disclose the identity of the informant, then

17 the case would have been dismissed pursuant to Nev. Rev. Stat.

18 § 49.365.

19       The evidence does not bear out Petitioner's contentions.

20 At the state-court evidentiary hearing, counsel testified that

21 although he did not remember the name of the confidential informant

22 in this case, as a matter of course he would ask the prosecution

23 for the identity of the confidential informant and check for any

24 conflicts of interest.  Ex. 22, pp. 20-22 (#19-6, pp. 20-22).

25 Petitioner's contends that the Court cannot accept counsel's

26 testimony as fact that he actually learned the identity of the

27 informant and checked for a conflict.  Petitioner, not Respondents,

28 has the burden of proof in this action; he must prove that counsel

-9-

did not learn or attempt to learn the identity of the confidential

informant.  Petitioner did not present any such evidence at the

state-court evidentiary hearing.  Consequently, he failed to prove

that counsel acted deficiently.

        In Ground Two(C), Petitioner argues that counsel failed

to investigate Petitioner's complaints of headaches and dementia.

"Trial counsel has a duty to investigate a defendant's mental state

if there is evidence to suggest that the defendant is impaired."

Douglas v. Woodford, 316 F.3d 1079, 1085 (9th Cir. 2003).  On this

issue, the state district court held:[4]

> b.   The court also finds that Van Ry testified credibly
> that Macias never mentioned anything to him about faulty
> translation, the absence of a meaningful plea bargain,
> headaches, or being pressured into pleading guilty as
> grounds for withdrawing the pleas.  [n.6:  To the extent
> that Macias alleged that counsel was ineffective in
> failing to "investigate Petitioner's basis for physical
> and mental incapacitation complaints of headaches and
> dementia," the court finds that, as pleaded, this is a
> naked allegation of ineffective assistance of counsel and
> thus fails to plead facts which, if true, would warrant
> relief.]  Macias' testimony to the contrary is not
> credible.

Ex. 24, pp. 5-6 (#19-8, pp. 6-7).  Counsel did remember Petitioner

telling him, around the time of the jury selection and the change

of plea, that he was having a headache.  Ex. 21, p. 51 (#19-5, p.

52).  Counsel also remembered that Petitioner was regretting what

he did and the effect that his actions had upon his family.  A

headache, by itself in a stressful situation like a criminal trial,

is not something that would cause a reasonable counsel to

---

[4]The Nevada Supreme Court summarily affirmed the district
court on this issue.  This Court looks through to the reasoned
decision of the district court.  Ylst v. Nunnemaker, 501 U.S. 797,
803 (1991).

1  investigate a client's mental condition.  The state district court
2  reasonably applied <u>Strickland</u>.  28 U.S.C. § 2254(d)(1).

3       Ground Three is a claim that the trial court abused its
4  discretion in failing to adhere to Nev. Rev. Stat. § 174.035, which
5  requires certain plea agreements to be in writing.  As the Court
6  has noted with respect to Ground Two(A), the Supreme Court of the
7  United States has not held that a plea agreement must be in
8  writing, only that it be on the record.  Furthermore, as the Court
9  has noted with respect to Ground One, the hearing on Petitioner's
10 change of plea meets that requirement.  Ground Three is without
11 merit.

12      Ground Four is a claim of cumulative error.  The Court
13 not having found any error in the proceedings, there is no
14 cumulative error, and this ground is without merit.

15      IT IS THEREFORE ORDERED that Petitioner's First Amended
16 Petition for Writ of Habeas Corpus (#17) is **DENIED**.  The Clerk of
17 the Court shall enter judgment accordingly.

18      DATED: November 30, 2009.

19
20                    _____
21                    HOWARD D. MCKIBBEN
                      United States District Judge
22
23
24
25
26
27
28

-11-